**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alex Murphy JOHNSON, Defendant-Appellant.**

**No. 26891.**

United States Court of Appeals Fifth Circuit.

June 30, 1969.

———◆———

Max. Lurie, Lurie & Capuano, Miami, Fla., for defendant-appellant.

William A. Meadows, Jr., U. S. Atty., J. V. Eskenazi, Theodore Klein, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, DYER, Circuit Judge, and HUNTER, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Appellant Johnson was indicted, tried by the Court, and convicted of violating Title 18, U.S.C.A. § 2231.[1] He seeks reversal on the proposition that the evidence was not sufficient to support conviction and that the court below committed error in denying his motion to suppress certain evidence—a loaded 22.22 calibre revolver.

The evidence reveals that on July 23, 1966, at about 1:30 P.M. a group of Special Agents of the Internal Revenue Service, armed with a search warrant for the search of the premises at 3417

---

1. "§ 2231. Assault or resistance"
   "(a) Whoever forcibly assaults, resists, opposes, prevents, impedes, intimidates, or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both; and—
   "(b) Whoever, in committing any act in violation of this section, uses any deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. June 25, 1948, c. 645, 62 Stat. 802."

Bacom Point Road, a/k/a State Road 715, Palm Beach County, Florida, arrived at the location specified in the search warrant for the purpose of executing that warrant. Upon arrival at the premises, two Special Agents were dispatched to the front door, two to the side door, and two to the rear door, each wearing his badge in plain view on the outside of his clothing and each shouting his identity as a "federal officer with a search warrant" as he proceeded to his assigned spot. Upon arrival at their assigned positions, the Special Agents knocked on the various doors and continued to announce that they were federal officers with a search warrant. Agent Pomerantz, arriving at the closest door, the front door, looked into the house through a glass pane in the door and observed the defendant in the living room with both hands loaded with rolls of tape and other papers, later identified as lottery paraphernalia. Agent Pomerantz continued to pound on the front door, shouting that he was a federal officer with a search warrant and admonishing the defendant not to burn anything. Agent Pomerantz observed a large flame engulfing the papers after which the defendant stepped to the front door where Agent Pomerantz, looking at the defendant "nose to nose", again advised the defendant of his identity and purpose and demanded that the defendant open the door immediately. The defendant replied that if Agent Pomerantz kept pounding on the door he "could get shot." The defendant thereafter left the front door and went to a room on the right, the dining room, and soon returned with another load of papers which he proceeded to burn in the fireplace in full view of Agent Pomerantz. Thereafter, Agent Hilker left his position at the side door and proceeded to the front of the house where he observed that Agent Pomerantz had not gained entry into the house. Agent Hilker then returned to the side door leading into the kitchen. After attempting to pry the side door latch open without success, Agent Hilker broke a glass pane in the side door and was about to stick his hand through the broken pane to unlock the door when the defendant drew back the curtain on the inside of the door and pointed a loaded 22-calibre pistol directly at Hilker and Agent Mennitt, who was standing immediately to his side. With the pistol in hand, the defendant admonished Hilker and Mennitt to "get away from here" and the agents had little choice but to withdraw. Mennitt and Hilker again announced themselves as federal officers with a search warrant, and after a period of between ten and twenty seconds the defendant dropped the curtain and disappeared from the agents' view. Shortly thereafter, Group Supervisor McCall stuck his hand through the broken glass pane, opened the door and entered the house. The gun which the defendant had brandished was discovered in the course of the search, fully loaded, in a drawer in the kitchen.

■ Appellant argues that it was error to deny his motion to suppress evidence (the gun) on the sole basis that the search warrant was issued without sufficient facts to support probable cause. We do not agree. The affidavit was based almost entirely upon the personal observations and investigation of the Special Agent, affiant, and other special agents reporting under him. It relates a detailed surveillance of the defendant's home (the premises specified in the affidavit and the search warrant), the defendant's wife, and associates and automobiles observed at the defendant's home on five successive Saturdays in June and July of 1966. The affidavit related that the property of one of the defendant's associates had been searched by local police on July 2, 1966 and pursuant to a search warrant; and that a quantity of lottery tickets and paraphernalia were seized. Furthermore, the affidavit related observations of agents during the period of surveillance that indicated a course of activity by the defendant, his wife, and his associates which carried all the hallmarks of a lottery operation centered at the defendant's home. Paragraph (6) of the affi-

davit is noteworthy in that it relates the agent's observations of the defendant burning numerous slips of paper of the same size and description of lottery tickets. Finally, the affidavit related agent investigation of telephone company records showing that during the period February 2, 1966 through May 18, 1966, long distance calls were made to the defendant's home from the phone registered in the name of Ardura, a known lottery figure, on 13 different Wednesdays, and all but one of these calls were connected at a time nearly contemporaneous with the announcement of the winning numbers of the Puerto Rican lottery.

The recited facts are only a part of the information contained in the affidavit and brought to the attention of the United States Commissioner. He found the facts sufficient to support probable cause for the issuance of the warrant. The district court below likewise found that probable cause existed. We agree. In addition, it should be added that the district court heard abundant testimony that the defendant used a gun in the commission of this offense. The admission of the gun found in the course of the search was cumulative evidence at best. This was a non-jury trial, and it is inconceivable that the disclosure of the gun into evidence per se would have prejudically affected the trier of the facts.

Without restating the facts, it is clear that after having been advised of the identity and purpose of Agent Pomerantz, the defendant went about the business of burning lottery payments in his fireplace. Thereafter, while well aware that federal agents were attempting to gain entry into his house he appeared at the side door and caused Agents Hilker and Mennitt to withdraw by pointing the loaded gun at them. The Court below listed as a part of its findings of fact the following:

"9. As Agent Hilker reached inside the window to open the door, the curtains covering the glass panes were pulled aside by the defendant, *who knew or should have known that the persons outside his kitchen door were federal officers engaged in the performance of their duties.* At that moment, the defendant thrust a pistol out of the opening in the door, pointed it at the agents and told them to get away." (Emphasis added)

Surely, as a matter of law, the evidence supported a finding that the defendant's conduct was within the proscription of Title 18, U.S.C.A. § 2231(b).

The judgment below is affirmed.